[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE SECOND AND THIRD COUNTS OF COUNTERCLAIM (#106)
 I BACKGROUND
This is a suit on an indemnity agreement brought by the plaintiff, Travelers Casualty and Surety Company ("Travelers"), against the defendants, FF Mechanical Contractors, Inc. and Mario Ferrucci (hereinafter collectively referred to as "FF"). Travelers' complaint alleges that in 1996, Aetna Casualty and Surety Company issued a labor and payment bond by which it, as surety, and FF, as principal, bound themselves to the Town of Windsor Locks for payment of all labor and material used by FF in the construction of Windsor Locks High School. The complaint further alleges that Aetna Casualty and Surety Company CT Page 5986 assigned its interest in the payment bond to Travelers. The complaint further alleges that Travelers paid Guarantee Mechanical Services, Inc., ("Guarantee") a subcontractor of FF, $74,320.55 for labor and materials supplied in the construction of the high school. In the present action, Travelers seeks recovery of the amount paid to Guarantee together with interest and costs of collection.
On December 7, 2000, FF filed an answer, special defenses and counterclaim. The counterclaim is in three counts. Count one of the counterclaim asserts that Travelers breached the indemnity agreement by paying Guarantee's claim for labor and materials despite the fact that FF advised Travelers that the claim should be denied because Guarantee breached its obligations to FF. Count two of the counterclaim asserts that Travelers breached the covenant of good faith and fair dealing that attached to the indemnity agreement. Count three of the counterclaim asserts that Travelers' actions violated the Connecticut Unfair Trade Practices Act, General § 42-110a et seq. ("CUTPA").
Travelers has moved to strike the second count of the counterclaim alleging that it fails to allege a malicious or evil motive and is therefore insufficient to state a cause of action for breach of an implied covenant of good faith. Travelers has also moved to strike the counterclaim's third count asserting that, as an insurance company, a CUTPA claim against it must be based on a violation of the Connecticut Unfair Insurance Practices Act, General Statutes § 38-60, et seq. ("CUIPA").
For the reasons set forth below, the motion to strike the counterclaim's second count is denied and the motion to strike the third count is granted.
 II STANDARD
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [counterclaim] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269,270, 709 A.2d 558 (1998). The motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Internal quotation marks omitted.) Doev. Yale University, 252 Conn. 641, 694, 748 A.2d 834 (2000). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Waters v. Autuori,236 Conn. 820, 825, 676 A.2d 839 (1996). "It is fundamental that in CT Page 5987 determining the sufficiency of a complaint . . . all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted . . ." (Citation omitted; internal quotation marks omitted.) Doev. Yale University, supra, 252 Conn. 667. Thus, "[t]he court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Faulkner v. United TechnologiesCorp., 240 Conn. 576, 580, 639 A.2d 293 (1997).
 III DISCUSSION
Second Count (Implied Covenant of Good Faith)
The gist of FF's allegation that Travelers breached the covenant of good faith is that Travelers paid the claim of Guarantee without notice to FF and in the face of FF's strong objection to the payment. As noted above, Travelers asserts that this count is defective because it does not adequately allege an evil or sinister motive on Travelers' part.
The implied duty of good faith and fair dealing is a covenant implied into a contract or contractual relationship. Magnan v. AnacondaIndustries, 193 Conn. 558, 566 (1984); See also 2 Restatement (Second) Contracts § 205 (1979) ("[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement").
Our Supreme Court has stated that "bad faith" generally implies "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's own right's or duties, but by some interested or sinister motive." Habetz v. Condon, 224 Conn. 231,237 (1992). The Supreme Court has further observed that "bad faith means more than mere negligence, it involves a dishonest purpose." Id. At the same, however, our Supreme Court has clearly adopted the Restatement's view on the implied covenant of good faith. Magnan v. AnacondaIndustries, Inc., supra 566. The Restatement's approach, while including conduct activated by a sinister motive, covers a broader range of deficient contractual performance. Comment d to Section 205 states:
 "Subterfuges and evasions violate the obligation of good faith in performance even though the actor believed his conduct justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is CT Page 5988 impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of power to specify terms, and interference with or failure to cooperate in the other party's performance."
Restatement (Second) Contracts § 205, comment d.
In Buckman v. People Express, Inc., 205 Conn. 166 (1987), an employer was found to have violated the implied duty of good faith by ignoring a discharged employee's multiple requests to continue health care coverage. Id. 169. The allegations in the present case involve similar evasive uncooperative conduct.
Construing the second count of the counterclaim most favorably to the pleader, the court finds that it adequately alleges a cause of action for breach of the duty of good faith. Accordingly, the motion to strike this count must be denied.
Third Count (CUTPA)
Travelers asserts that the CUTPA claim set forth in the counterclaim's third count must be stricken because it does not allege a pattern of unfair practices. In this regard, Travelers relies on our Supreme Court's decision in Mead v. Burns, 199 Conn. 651 (1986). In Mead, the Supreme Court construed the relationship between the Connecticut Unfair Insurance Practices Act ("CUIPA), General Statutes § 38-815 et seq., and CUTPA. The court ruled that a CUIPA cause of action required an allegation of a general business practice in violation of the Act which meant more than one act of misconduct. Id., 658-59. Moreover, the court further ruled that a CUTPA cause of action based on unfair insurance practices likewise required more than an allegation of a single unfair practice. Id., 664.
FF does not dispute that Mead mandates that a CUTPA violation for unfair insurance practices must be based on CUIPA. FF asserts, however, that Mead does not apply to the present case because the suretyship contract involved was not a contract for insurance. FF relies onBlakeslee Arpair Chapman, Inc. v. United States Fidelity and GuarantyCompany, 11 Conn.L.Rptr No. 6,170 (April 18, 1994) (Hurley, J.) which held that a payment bond was not a contract or policy of insurance and therefore outside the reach of CUIPA. This decision was based on the common law distinctions between a surety contract and a contract of insurance. CT Page 5989
General Statutes § 38a-815 provides in part:
 "No person shall engage in this state in . . . an unfair or deceptive act or practice in the business of insurance . . ."
General Statutes § 38a-816 sets forth practices that are defined as unfair methods of competition and unfair and deceptive acts or practices in the "business of insurance." CUIPA therefore applies to unfair practices conducted in the "business of insurance."
General Statutes § 38a-271 provides in part:
 "Any of the following acts effected in this state . . . is defined to be doing an insurance business in this state: . . . (2) the making of or proposing to make, as a guarantor or surety, any contract of guaranty or suretyship . . ."
Based on the above statutes, the court concludes that the "business of insurance" includes the making of surety contracts of the type involved in the present case. Accordingly, unfair practices in the execution of such surety contracts is within the statutory reach of CUIPA notwithstanding the common law distinctions between surety contracts and insurance contracts discussed in Blakeslee.
Since the court has concluded that CUIPA applies, pursuant to Mead a CUTPA cause of action cannot rest on a single unfair practice. The allegations in the third count are based on the execution of one surety contract and, accordingly, are insufficient to state a cause of action under CUTPA. The motion to strike the third count must be granted.
 CONCLUSION
Travelers' motion to strike the second count of the counterclaim is denied and its motion to strike the third count of the counterclaim is granted.
So Ordered, at New Haven Connecticut this 8th day of May, 2001.
Devlin, J